IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROMEO JOYNER-EL,

   Plaintiff

v.     CIVIL NO. JKB-10-1044

BALTIMORE COUNTY, MD., *et al.*

   Defendants

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Romeo Joyner-El ("Plaintiff") brought this suit against Baltimore County and Major Charles Ittner of the Baltimore County Department of Corrections ("Defendants") for alleged employment discrimination in violation of 42 U.S.C. § 1983, the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*. Defendants now move for summary judgment. The issues have been briefed and no oral argument is required. Local Rule 105.6. For the reasons set forth below, Defendants' Motion For Summary Judgment (ECF No. 22) is GRANTED.

### I. BACKGROUND

In June of 2007, Plaintiff began work as an officer in the Baltimore County Department of Corrections ("DOC"). Although his initial performance evaluations were positive, on three occasions other DOC employees accused Plaintiff of misconduct involving "coarse, profane, or insolent language." In the first instance, several staff members reported that Plaintiff engaged in a heated argument with another employee, Linda McCaslin, after which he said "I will bust her

1

jaw," "I will bust her upside her head," and "I will go upstairs in a red jumpsuit."[1] In the second instance, one of Plaintiff's female coworkers, Officer Alford, accused him of saying "there are some dirty bastards down here," which she took as referring to her. In the third instance, several of Plaintiff's fellow officers accused him of improperly threatening an inmate, saying "I will get up in your ass if you keep talking to me like that."

Plaintiff and McCaslin resolved their dispute privately, but the other matters were set in for an administrative hearing before Defendant, Major Charles Ittner ("Major Ittner"). Plaintiff disputed the allegations, but at the conclusion of the hearing Major Ittner found that Plaintiff had violated various articles of the DOC Operation Manual and recommended that his employment be terminated. The Director of the DOC, James O'Neil, adopted Major Ittner's recommendation and notified Plaintiff of his termination on March 28, 2008.

On April 27, 2010, Plaintiff filed a complaint with this Court, alleging that Major Ittner's decision was motivated by personal animus toward Plaintiff, in part because he is black. The allegation is based on Plaintiff's opinion that Major Ittner treated him unfairly and with disrespect during the hearing, on his perception that Major Ittner treated him less favorably than white employees in general, and on alleged statements by other officers that Major Ittner was "out to get him" because of the incident with McCaslin and because of his "ghetto background." The complaint seeks damages and injunctive relief against Major Ittner and Baltimore County under 42 U.S.C. §§ 1983 & 2000e, *et seq.*, respectively.

**II. STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56(a) directs district courts to grant summary judgment if the moving party shows "that there is no genuine dispute as to any material fact" and that it is

---

[1] Defendants understand this statement to mean "he will be charged with first degree murder." (Def.'s Mem. Summ. J. 3, ECF No. 22-1).

"entitled to judgment as a matter of law." If the moving party carries this burden, then summary judgment will be denied only if the opposing party can identify specific facts, beyond the allegations or denials in the pleadings, that show a genuine issue for trial. Fed. R. Civ. P. 56(e)(2). To carry these respective burdens, each party must support its assertions by citing particular parts of materials in the record constituting admissible evidence. Fed. R. Civ. P. 56(c). The court will then assess the merits of the motion, viewing all facts and reasonable inferences in the light most favorable to the opposing party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008).

### III. ANALYSIS

Defendants' main argument is that Plaintiff cannot establish a *prima facie* case of race discrimination. The Court agrees.

Claims of employment discrimination, both under Title VII and § 1983, may be proved through either of two types of analyses: the *McDonnell Douglas* "burden shifting" or "pretext" analysis, or a "mixed motive" analysis. *Abasiekong v. City of Shelby*, 744 F.2d 1055, 1058 (4th Cir. 1984); *Gant ex rel. Gant v. Wallingford Bd. of Educ.*, 195 F.3d 134, 146 (2nd Cir. 1999). Under the "pretext" analysis, a plaintiff must make out a *prima facie* case of employment discrimination by showing that he meets the following four criteria: (1) he is a member of a protected class; (2) his job performance and conduct were satisfactory; (3) he suffered an adverse employment action; and, (4) his position remained open or was filled by a similarly qualified applicant outside the protected class. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004). If the plaintiff succeeds in making out a *prima facie* case, then the burden of production shifts to the employer to articulate a legitimate reason for the alleged discriminatory action. *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir.

3

2010). If the employer carries this burden, then the final burden shifts back to the plaintiff to demonstrate that the employer's proffered reasons were merely a pretext for discrimination. *Id*. In a "mixed motive" analysis, on the other hand, a Plaintiff must simply prove by a preponderance of the evidence, either direct or circumstantial, that his membership in a protected class actually motivated the employer in taking the adverse action.

After reviewing the evidence submitted by Plaintiff in opposition to summary judgment, the Court finds that it is insufficient to create a triable issue of fact under either standard. First, Plaintiff alleges that "[he] has asserted in his deposition and in the accompanying affidavits that African-American employees are dealt with more harshly, an assertion somewhat corroborated by the deposition testimony of Messrs. O'Neil and Ittner." Plaintiff offers no citations to these documents, however, and the Court is unable to find any reference to Defendant's treatment of black employees in any of the deposition testimony that Plaintiff has submitted. The only relevant statements appear to be in Plaintiff's affidavits, which read in pertinent part:

> Major Ittner shouted at me, told me to "shut up" and was otherwise derogatory and demeaning, conducting himself in a manner I have never seen him employ in addressing white subordinates. As I indicated in my deposition, Major Ittner had consistently given me the cold shoulder in our encounters at the jail, prior to my termination, in marked contrast to the cordiality he showed to white employees. As, again, I indicated in my deposition, Major Ittner was friends with Linda McCaslin, the white employee who had complained about me for standing up to her in a petty disagreement over administrative matters; although my discussion with Ms. McCaslin did not result in any disciplinary action being taken against me, at my termination hearing Major Ittner acted as if the incident should be counted for "progressive discipline" purposes, in justifying my termination. I believe this reflects his favoritism for and solidarity with white employees, to the exclusion of the handful of black employees such as myself who are employed as classification officers.

(Pl.'s Aff., ECF No. 27-2); and,

4

> The prison environment was one in which profanity – by both inmates and officers – is common, and officers are often less than "polite" in chastising recalcitrant inmates. Accordingly, I believe the punishment inflicted upon me reflects a "double standard," in that it imposes an unduly harsh penalty upon me for conduct widely tolerated by white correctional officers, or, at worse, subjected to lesser discipline.
>
> African-American officers are dealt with more harshly at the Baltimore City [sic] Detention Center. About the same time I was terminated, another African-American Detention Center employee, Michael Joiner, was forced to resigned [sic] based on accusations he had "verbally assaulted" juvenile inmates. Angelia Gross, another African-American correctional officer, was terminated without appeal rights or other due process safeguards, as I was, which I believe reflects an animus against African-American officers.

(Pl.'s Supp. Aff., ECF No. 27-6).

These statements fail to generate an issue of material fact for several reasons. First, Fed. R. Civ. P. 56(c)(4) requires affidavits offered to support or oppose motions for summary judgment to be "made on personal knowledge," and to "set out facts that would be admissible in evidence..." Plaintiff's statements regarding his "beliefs" that the facts reflect racial animus, favoritism, and double standards, are not statements of personal knowledge and would not be admissible in evidence to prove the truth of those beliefs. Therefore, the Court cannot consider them in deciding this motion. Second, Plaintiff's assertion that Major Ittner treated him less "cordially" than white officers does not raise an inference of racial discrimination, because Plaintiff has not identified any white officer who engaged in misconduct similar to his and still received cordial treatment from Major Ittner. Indeed, Plaintiff defeats any such inference by suggesting that Major Ittner's alleged hostility toward him was in fact motivated by his altercation with McCaslin, who was Major Ittner's friend. Similarly, Plaintiff's allegations regarding the treatment of other black employees also do not suggest discrimination, because

Plaintiff has identified no non-black employees who engaged in similar misconduct and received more lenient treatment.

Next, Plaintiff alleges that "Major Ittner insisted upon treating Mr. Joyner as a probationer, disregarding Mr. Joyner's protestations to the contrary," and that:

> Major Ittner insisted upon treating the two (2) incidents before him as, in fact the second and third incidents for purposes of applying progressive discipline, claiming disingenuously that a disagreement between Mr. Joyner and a white employee, Linda McCaslin that occurred months before, was in fact the first "incident."

This allegation has no probative value with regard to discrimination. Standing alone, Major Ittner's procedural decisions, even if incorrect and prejudicial to Plaintiff, do nothing to illuminate what motivated him to ultimately recommend Plaintiff's termination.

Finally, Plaintiff alleges that he "had been warned by other officers [that] Major Ittner was out to get him because of the McCaslin incident and because he perceived Mr. Joyner as having a 'ghetto' background associated with the City jail and his African-American ethnicity." To the extent Plaintiff offers these statements for their truth, they are plainly hearsay and are thus inadmissible. *See* Fed. R. Evid. 801 & 802.

On these facts, Plaintiff cannot establish a *prima facie* case under a "pretext" analysis, because he has offered no evidence showing that he was meeting the DOC's legitimate expectations, or that his position remained open or was filled by a non-black applicant. *See Hill*, 354 F.3d at 285. Plaintiff also cannot succeed under a "mixed motive" analysis, because, for the reasons already explained, none of his allegations amount to direct or circumstantial evidence that his race was a motivating factor in Major Ittner's decision to recommend his termination. Defendants are therefore entitled to judgment as a matter of law.

## IV. CONCLUSION

Accordingly, an order shall enter GRANTING Defendants' Motion For Summary Judgment (ECF No. 22).

Dated this 16th day of June, 2011

BY THE COURT:

/s/
James K. Bredar
United States District Judge